## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **HACKENSACK UNIVERSITY MEDICAL CENTER, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No. 21-12233 (ES) (MAH)** |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | : | |
| | : | |
| **Defendant.** | : | |

### I.    INTRODUCTION

This matter comes before the Court on Defendant Xavier Becerra's motion to transfer this action to the District of Columbia.  Def.'s Mot. to Transfer, June 23, 2021, D.E. 8. Defendant has also moved for a stay of this case pending the Court's resolution of the instant application.  *Id.*  The Court has considered the parties' submissions and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, has decided this motion without oral argument. For the reasons set forth below, the Court will deny the motion to transfer and will deny as moot the motion to stay.

### II.    BACKGROUND

Plaintiffs are eight New Jersey non-profit hospitals that participate in the federal Medicare program.  Compl., June 7, 2021, D.E. 1, at ¶ 1.  As such, they occasionally receive outlier payments, which are disbursements for treating "patients in need of serious medical care" where the treatment costs exceed the standard Medicare program payment.  *Id.* at ¶ 2.  Outlier payment eligibility is contingent upon several factors, including the "fixed-loss threshold

applicable at the time of the patient's discharge."[1]  *Id.* at ¶ 24.  The Department of Health and Human Services ("the Department") administers the outlier payment program and sets the fixed-loss threshold annually.  42 C.F.R. § 412.80.  *Id.* at ¶ 28; *see also id.* at ¶¶ 2, 7-8, 17, 20-24.

On June 7, 2021, Plaintiffs initiated this matter by filing a Complaint against Defendant in his official capacity as the secretary of the Department.  *Id.* at ¶ 5.  According to the Complaint, the Department arbitrarily set the fixed-loss thresholds for fiscal years 2006 through 2013.  *Id.* at ¶¶ 3, 68-75.  As a result, certain of Plaintiffs' patient-cases were deemed ineligible for outlier status, and some of Plaintiffs' qualifying cases generated lower than anticipated reimbursements.  *Id.* at ¶ 72.  Among other things, Plaintiffs seek an order (1) vacating the thresholds for the fiscal years at issue; and (2) remanding Plaintiffs' appeals for reconsideration. *Id.* at p. 34, ¶ 2.

On June 23, 2021, Defendant moved to transfer this case to the District of Columbia, where four of the plaintiffs in this matter – Ocean Medical Center, Jersey Shore University Medical Center, Bayshore Community Hospital, and Southern Ocean Medical Center – are plaintiffs in a separate action filed against the Department's secretary.  *See Univ. of Colo. Health v. Burwell*, Civ. No. 14-1220 (filed July 18, 2014) ("the D.C. Action").  Def.'s Notice of Mot.,

---

[1] The fixed-loss threshold is described in 42 U.S.C. § 1395ww(d)(5)(A)(ii)-(iii), which provides in pertinent part that a

> hospital may request additional payments in any case where charges, adjusted to cost . . .   exceed the sum of the applicable DRG [diagnostic category] prospective payment rate plus any   amounts payable under subparagraphs (B) and (F) plus a fixed dollar amount determined by the Secretary.

> The amount of such additional payment[s] . . . shall be determined by the Secretary and shall . . . approximate the marginal cost of care beyond the cutoff point applicable under clause (i) or (ii).

June 23, 2021, D.E. 8, at p. 1; Def.'s Br., D.E. 8-1, at pp. 1-2, 6.  In that case, the overlapping plaintiffs also challenge the Department's outlier payment determinations, albeit for different fiscal years.  *See* D.C. Action Second Amended Compl., Feb. 25, 2019, D.E. 114, at ¶ 6.

Defendant asserts both 28 U.S.C. § 1404(a) and the first-filed rule favor transfer.  Def.'s Br., D.E. 8-1, at pp. 1-2.  Plaintiffs oppose the motion.  Pls.' Br. in Opp., July 6, 2021, D.E. 12, at p. 22.

### III.    DISCUSSION

A.    <u>Transfer Pursuant to 28 U.S.C. § 1404(a)</u>

The Court has the discretion to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all the parties have consented" under § 1404(a).  Because Plaintiffs have laid a proper venue, Defendant bears the burden of establishing transfer is appropriate and warranted.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Transfer may be appropriate under § 1404(a) if a defendant satisfies two factors:  (i) that venue is proper in the transferee district, and (ii) that the transferee district can exercise personal jurisdiction over all the parties.  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).  28 U.S.C. § 1391 determines proper venue in all civil cases.  Under § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect

3

to such action.

Plaintiffs do not dispute that the District of Columbia is a proper venue, and they do not challenge that court's ability to exercise personal jurisdiction over the parties.  *See* Pls.' Br., D.E. 12, at p. 27; *see also* 42 U.S.C. § 1395oo(f)(1) (outlining appropriate venues for judicial appeal from Provider Reimbursement Review Board and Department decisions).  Therefore, it appears that venue and personal jurisdiction are not obstacles to the transfer of this action.

The Court next considers whether Defendant has established transfer is warranted.  That determination requires a balancing of the private and public interest factors espoused by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d at 879.  The private interest factors include:  (a) Plaintiffs' choice of forum; (b) Defendant's preference; (c) where the claims arose; (d) the parties' convenience as indicated by their relative physical and financial condition; (e) the convenience of witnesses; and (f) the location of books and records.  *Id.*

"In the Third Circuit, a plaintiff's choice of forum is a 'paramount concern' in deciding a motion to transfer venue."  *Wm. H. McGee & Co., Inc. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 289 (D.N.J. 1997).  Courts generally "assign the plaintiff's choice of forum significant weight."  *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 (D.N.J. 1996) (citation omitted).  "The choice is 'entitled to greater deference'" where, as here, "a plaintiff chooses its home forum."  *Wm. H. McGee*, 6 F. Supp. 2d at 289 (quoting *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993)).

In certain circumstances, however, a plaintiff's choice of forum is accorded less weight. *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998).  The deference may be reduced, for example, "where the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit," *id.*, or where the plaintiff has engaged in forum shopping, *see, e.g.*, *Yang v.*

4

*Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006) (giving plaintiffs' preference less weight because they "only pursued their case [in this District] after their options in Georgia effectively ran out"). "Under those circumstances, a court may consider the place with significant contacts to the claim to be an appropriate forum." *Kaye v. Shdeed & Hartmann*, Civ. No. 91-1103, 1991 WL 87584, at *2 (D.N.J. May 22, 1991) (citation omitted).

In this matter, the Court finds substantial deference is owed to Plaintiffs' decision to litigate in their home forum, notwithstanding Defendant's arguments to the contrary.  Defendant opines that Plaintiffs' forum choice is "sharply undermined" by (1) their decision to file the D.C. Action and (2) their participation in "forum shopping" and "tactical maneuvering."  Def.'s Br., D.E. 8-1, at pp. 19-20.  In making his first argument, Defendant overlooks the fact that only four of the eight plaintiffs in this matter are parties in the D.C. Action, and he offers no case law justifying the attribution of four of the plaintiffs' actions to all eight.  *Id.*; *see also* Def.'s Reply Br., July 12, 2021, D.E. 14, at p. 1.  Plaintiffs are not, as Defendant suggests, "the same" merely because they are under the common ownership of Hackensack Meridian Health.  Def.'s Reply Br., D.E. 14, at p. 3.  "Subsidiaries and parent corporations are distinct legal entities," and the actions of one entity, whether parent or sibling, cannot be imputed to another absent compelling, extraordinary circumstances which are not present here.  *Honeywell*, 817 F. Supp. at 481; *Poasada v. Big Lots, Inc.*, Civ. No. 10-5693, 2011 WL 4550158, at *3 (D.N.J. Sept. 29, 2011).

Defendant has also failed to substantiate his allegations that Plaintiffs are engaged in tactical maneuvering and forum shopping.  Def.'s Br., D.E. 8-1, at p. 19.  "Forum shopping is '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.'"  *Smith v. City of Plainfield*, Civ. No. 15-7258, 2016 WL 4402812, at *4 (D.N.J. Aug. 15, 2016) (alteration in original) (quoting Black's Law Dictionary (8th ed. 2004)).  Here,

Defendant merely opines that Plaintiffs changed their choice of forum "only after the [District of Columbia] court . . . dismissed some of their claims in [a] March 2020 ruling."  Def.'s Br., D.E. 8-1, at p. 19; Def.'s Reply Br., D.E. 14, at p. 10.

Defendant has pointed out a *correlation* but has not established *causation*.  A review of the referenced opinion reveals that of the claims initiated by the four overlapping plaintiffs, only one was dismissed.  Specifically, the court dismissed their claim that the Department's methods amounted to a rule requiring separate notice and comment for lack of subject matter jurisdiction.  *Univ. of Colo. Health v. Azar*, 486 F. Supp. 3d 185, 206 (D.D.C. 2020).  Plaintiffs did not, however, withdraw their remaining claims and then file them here, as forum-shopping litigants might be inclined to do.  To the contrary, the overlapping plaintiffs have not duplicated any of their D.C. Action claims in this District.  In the D.C. Action, each of the overlapping plaintiffs seek review of their outlier payments for fiscal years ending December 31, 2008, December 31, 2009, and December 31, 2012.  D.C. Action Second Amended Compl., D.E. 114, at ¶ 6(a), 6(b), 6(d) & 6(e).  In this District:

- Ocean Medical Center seeks review of its outlier payments for fiscal year ending December 31, 2010.  Pl. Compl., D.E. 1, at ¶ 4(c).

- Jersey Shore University Medical Center seeks review of its outlier payments for fiscal years ending December 31, 2010 and December 31, 2011.  *Id.* at ¶ 4(d).

- Bayshore Community Hospital seeks review of its outlier payments for fiscal years ending December 31, 2010 and December 31, 2011.  *Id.* at ¶ 4(e).

- Southern Ocean Medical Center seeks review of its outlier payments for fiscal years ending December 31, 2010 and December 31, 2011.  *Id.* at ¶ 4(f).

The Court therefore finds there is no basis to conclude Plaintiffs have engaged in tactical

maneuvering or forum shopping, and will afford Plaintiffs' choice of forum the substantial deference it is owed.

The next private interest factor is Defendant's preference.  *Jumara*, 55 F.3d at 879.  By filing the instant motion to transfer, Defendant has indicated he would rather litigate in the District of Columbia.  Def. Mot. to Transfer, D.E. 8.  Accordingly, this factor weighs in favor of transfer.  *McNulty v. J.H. Miles & Co., Inc.*, 913 F. Supp. 2d 112, 117 (D.N.J. 2012); *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012).

The third factor, where the claims arose, requires the Court to consider "where the majority part of events and omissions from which [Plaintiffs'] claim arise, took place."  *Snack Joint LLC v. OCM Grp. USA*, Civ. No. 21-818, 2021 WL 4077583, at *8 (D.N.J. Sept. 8, 2021) (first alteration in original) (citation omitted); *see also Tang v. Eastman Kodak Co.*, Civ. No. 20-10462, 2021 WL 2155057, at *7 n.8 (explaining, "under § 1404(a), courts must select 'the most *appropriate* venue'").  The parties disagree on this issue.  Def.'s Br., D.E. 8-1, at p. 20; Pls.' Br., D.E. 12, at pp. 26-27.  Defendant argues the District of Columbia is the most appropriate venue because "[P]laintiffs are challenging rules adopted by the Secretary in the District of Columbia." Def.'s Br., D.E. 8-1, at p. 20; *see also* Def.'s Reply Br., D.E. 14, at p. 3.  Plaintiffs concede that the Department's rules are important to their claims but counter "the claims truly . . . arise from the Hospitals' cost reports and from the fiscal intermediary's decisions on them – none of it [sic] activity in the District of Columbia."  Pls.' Br., D.E. 12, at pp. 26-27.

The Court agrees with Plaintiffs' position.  Plaintiffs appeal reimbursements received in the State of New Jersey for the treatment of New Jersey patients.  *See generally* Compl., D.E. 1; *see also* Exhibit A to Pl.'s Compl., D.E. 1-1, at pp. 16-28 (describing providers' names and locations).  They challenge the application of the Department's rules to their patients and

circumstances, not the mere creation of said rules.  Consequently, this factor weighs against

transfer to the District of Columbia.

The parties agree that the remaining private interest factors – the location of documents

and convenience of the parties and witnesses – are neutral.  Def.'s Br., D.E. 8-1, at pp. 20-21;

Pls.' Br., D.E. 12, at p. 26.  The Court therefore finds that the private interest factors collectively

weigh against transferring this matter to the District of Columbia.

Having determined that the private interest factors disfavor transferring this matter, the

Court turns to the public interest factors, which are:

> the enforceability of the judgment; practical considerations that
> could make the trial easy, expeditious, or inexpensive; the relative
> administrative difficulty in the two fora resulting from court
> congestion; the local interest in deciding local controversies at
> home; the public policies of the fora; and the familiarity of the trial
> judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80.

The parties agree that the first public interest factor, the enforceability of judgment, is

neutral.  Def.'s Br., D.E. 8-1, at p. 21; Pls.' Br., D.E. 12, at p. 26.  Defendant also states, and

Plaintiffs do not dispute, that the "local interest in deciding local controversies," "public policies

of the fora," and "familiarity of the trial judge with the applicable state law" factors are not

relevant to this motion.  Def.'s Br. D.E. 8-1, at pp. 21-22.  The Court therefore considers these

factors – in addition to the "practical considerations of transfer" factor, which no party has

addressed – neutral.

Defendant argues that the third public interest factor, relative administrative difficulty,

weighs in favor of transfer because this District has several judicial vacancies, which have been

characterized as a "judicial emergency."  Def.'s Br., D.E. 8-1, at p. 21.  While both the District

of New Jersey and the District of Columbia have judicial vacancies, only the District of New

Jersey is in a state of judicial emergency.  United States Courts, "Judicial Emergencies," https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last updated Sept. 30, 2021); United States Courts, "Current Judicial Vacancies," https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last updated Sept. 30, 2021).  The Court therefore concludes, as other courts in this District have, that this factor weighs in favor of transfer.  *See, e.g.*, *Crowe v. Johnson & Johnson*, Civ. No. 15-6305, 2021 WL 1611245, at *3 (D.N.J. Apr. 26, 2021); *see also Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*, Civ. No. 20-6180, at *8, 2021 WL 268176 (D.N.J. Jan. 27, 2021).

The Court finds, however, that the private interest factors disfavoring transfer substantially outweigh the sole public interest factor in support.  The Court therefore holds that Defendant has not established transfer is warranted under § 1404(a).

   B.  Transfer Under the First-Filed Rule

"As explained by the Third Circuit:  The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank.  It gives courts 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Phoenix Ins. Co. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 419 (E.D. Pa. 2019) (quoting *E.E.O.C. v. Univ. of Pa*., 850 F.2d 969, 971 (3d Cir. 1988)).  Under the rule, "[w]hen two suits involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 454 (D.N.J. 1999) (quoting *Honeywell*, 817 F. Supp. at 487).

In this District, "the most important consideration in a first-filed rule analysis is overlapping subject matter." *Catanese v. Unilever*, 774 F. Supp. 2d 684, 687 (D.N.J. 2011). "Neither identical parties nor identical issues are needed, only a 'substantial overlap.'" *Nature's Benefit v. NFI*, Civ. No. 06-4836, 2007 WL 2462625, at *3 (D.N.J. Aug. 27, 2007) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)); *accord Worthington v. Bayer Healthcare, LLC*, 2012 U.S. Dist. LEXIS 44880, at *16 (D.N.J. Mar. 30, 2012). The subsequently-filed case "must be 'truly duplicative of the suit before [the court].' That is, '[t]he one must be materially on all fours with the other . . . [T]he issues 'must have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007) (alterations in original) (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)).

Defendant contends that this case should be transferred to the District of Columbia under the first-filed rule because the "same parties are already engaged in litigation concerning the same agency rules." Def.'s Br., D.E. 8-1, at p. 18; *see also* Def.'s Reply Br., D.E. 14, at p. 3. Plaintiffs dispute this characterization. In their opposition, they explain that a threshold-setting rule is typically given effect for a federal fiscal year, which typically "stretches across . . . two different calendar years." Pl. Br., D.E. 14, at p. 20. Consequently, for the 2009 cost-reporting period in dispute in the D.C. Action, reimbursement depends primarily on the fiscal year 2009 threshold; however, three months' worth of the overlapping plaintiffs' 2009 outlier payment claims depend upon the fiscal year 2010 threshold at issue in this matter. *Id.* Conversely, for the 2011 cost-reporting period at issue in this case, three months' worth of reimbursements are dependent upon the fiscal year 2012 threshold in dispute in the D.C. Action. *Id.* Plaintiffs concede there is "[a]t most . . . some overlap between issues," but that overlap, Plaintiffs argue,

"is far from making this case 'on all fours'" because there is "no overlap in the claims between the two cases." *Id.*

The Court finds there are substantial differences between the two cases, such that it cannot be said the issues "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* First, four of the plaintiffs in this case are not plaintiffs in the D.C. Action. Clearly, then, resolution of the D.C. Action will not resolve any part of those plaintiffs' claims. Second, the D.C. Action will presumably resolve outlier payment disputes concerning fiscal years 2008, 2009, and 2012, but not the fiscal year 2010 and 2011 payments at issue here. Finally, for reasons already discussed at length, the Court finds little merit in Defendant's argument that the parties are "the same."

Defendant has therefore failed to establish the first-filed rule applies to this matter.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to transfer this matter to the United States District Court for the District of Columbia [D.E. 8] is denied. Defendant's request to stay this matter pending resolution of the motion to transfer [D.E. 8] is denied as moot. An appropriate Order will accompany this Opinion.


                                        s/Michael A. Hammer
                                        **UNITED STATES MAGISTRATE JUDGE**

**Dated:**          **September 30, 2021**

11