UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HACKENSACK UNIVERSITY MEDICAL CENTER, et al.,** | Civil Action No. 21-12233 (ES) (MAH) |
| **Plaintiffs,** | |
| v. | |
| **XAVIER BECERRA,** *Secretary, U.S. Department of Health and Human Services,* | OPINION |
| **Defendant.** | |

## I.     INTRODUCTION

This matter comes before the Court by way of the parties' July 29, 2022 letter. Jt. Dispute Letter, July 29, 2022, D.E. 46. Defendant informally moves to compel Plaintiffs' response to three interrogatories objected to in whole or in part by Plaintiffs. *Id.* at pp. 1, 4. The Court has considered the parties' respective positions, as well as the exhibits attached to the joint dispute letter. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decides Defendant's application without oral argument. For the reasons set forth below, Defendant's informal motion to compel is **denied.**

## II.    BACKGROUND

Plaintiffs are eight New Jersey non-profit hospitals that participate in the federal Medicare program. Compl., June 7, 2021, D.E. 1, at ¶ 1. As such, they occasionally receive outlier payments, which are disbursements for treating "patients in need of serious medical care," where the treatment costs exceed the standard Medicare program payment. *Id.* at ¶ 2. Outlier payment eligibility is contingent upon several factors, including the "fixed-loss threshold applicable at the time of the patient's discharge." *Id.* at ¶ 24. The Department of Health and

Human Services ("the Department") administers the outlier payment program and sets the fixed-loss threshold annually. 42 C.F.R. § 412.80. Compl., D.E. 1, at ¶ 28; *see also id.* at ¶¶ 2, 7-8, 17, 20-24.

On June 7, 2021, Plaintiffs initiated this matter by filing a Complaint against Defendant in his official capacity as the Secretary of the Department. *Id.* at ¶ 5. According to the Complaint, the Department arbitrarily set the fixed-loss thresholds for fiscal years 2006 through 2013. *Id.* at ¶¶ 3, 68-75. As a result, certain of Plaintiffs' patient-cases were deemed ineligible for outlier status, and some of Plaintiffs' qualifying cases generated lower than anticipated reimbursements. *Id.* at ¶ 72. Among other things, Plaintiffs seek an order (1) vacating the thresholds for the fiscal years at issue; and (2) remanding Plaintiffs' appeals for reconsideration. *Id.* at p. 34, ¶ 2.

Four of the Plaintiffs in this matter – Ocean Medical Center, Jersey Shore University Medical Center, Bayshore Community Hospital, and Southern Ocean Medical Center – are named plaintiffs in a separate action filed against Defendant in the District of Columbia: *University of Colorado Health v. Burwell*, Civ. No. 14-1220 (filed July 18, 2014) ("the D.C. Action"). *See* Def.'s Br. in Supp. of Mot. to Transfer, June 23, 2021, D.E. 8-1, at pp. 1-2, 6. On June 27, 2022, Defendant filed a letter expressing his belief that a ruling in the D.C. Action "justifies application of issue preclusion (collateral estoppel) in this case against all eight plaintiffs, given that the plaintiff hospitals are all affiliates and coordinated their litigation efforts in *University of Colorado Health* and this case." Def.'s Notice, June 27, 2022, D.E. 44, at p. 3. Defendant also requested leave "to take limited discovery from [P]laintiffs concerning the control and coordination of their litigation efforts." *Id.* The Undersigned discussed the issue with the parties during a conference on June 29, 2022. Following the June 29, 2022 conference,

the Court entered an Order directing the parties to "meet and confer regarding the issue preclusion discovery dispute," and file a joint letter, if necessary, no later than July 29, 2022. Order, June 29, 2022, D.E. 45.

The parties timely filed the instant letter. The parties report that on July 6, 2022, Defendant served the following interrogatories on Plaintiffs:

> 1.      Identify every person or entity that was a client in any attorney-client relationship in which the scope of representation included conduct of litigation in *University of Colorado Health at Memorial Hospital v. Becerra*, No. 14-cv-1220 (D.D.C.), or any subset of the eight civil actions now consolidated under that caption. For any attorney-client relationship that did not span the entire specified period, indicate the dates of the relationship.
>
> 2.      Identify every person or entity that was a client in any attorney-client relationship in which the scope of representation included conduct of litigation in *Hackensack University Medical Center v. Becerra*, No. 12-11233 (D.N.J.). For any attorney-client relationship that did not span the entire specified period, indicate the dates of the relationship.[; and]
>
> 3.      Separately for each client within each attorney-client relationship listed in the responses to Interrogatories 1 and 2 above, identify every person or entity that was identified to or recognized by plaintiffs' counsel (in any manner, including expressly, impliedly, or by operation of law) as authorized to direct or convey directions to plaintiffs' counsel with respect to material litigation decisions or settlement decisions, to provide consent, or to receive or convey communications from plaintiffs' counsel about material litigation developments, on behalf of the listed client. For any identification to or recognition by plaintiffs' counsel that was not applicable for the entire period, indicate the dates it was applicable, and for any designation that was limited or conditioned in some way, provide details of the limitation or condition.

Exhibit 1 to Jt. Dispute Letter, D.E. 46-1, at pp. 3-5; *see also* Jt. Dispute Letter, D.E. 46, at p. 1. Plaintiffs objected to each of Defendant's interrogatories. Jt. Dispute Letter, D.E. 46, at pp. 1-2. After meeting and conferring by phone and email, Defendant agreed to modify and narrow Interrogatory 1 "so as not to seek information about hospitals and hospital networks unrelated to

Hackensack Meridian Health if they directed the *University of Colorado Health* litigation only on behalf of themselves and identified affiliates."[1]  *Id.* at p. 2 (citing Exhibit 2 to Jt. Dispute Letter, D.E. 46-2, at p. 2).  Plaintiffs continue to object to Interrogatories 1 and 2 in part, and Interrogatory 3 in full.  *Id.* at p. 1; *see also id.* at p. 7.

### III.    DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) clearly defines the scope of discovery:

> Unless otherwise limited by court order, . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

An interrogatory served pursuant to Federal Rule of Civil Procedure 33 "may relate to any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33(a)(2).  "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  *Id.*  However, the Court has "broad discretion to manage [its] docket

---

[1] By way of email dated July 21, 2022, Defendant proposed that "[a] client other than Riverview Medical Center, Ocean Medical Center, Jersey Shore University Medical Center, Bayshore Community Hospital, or Southern Ocean Medical Center may be excluded from the plaintiffs' response to Interrogatory No. 1" if the Plaintiff met certain conditions.  Exhibit 2 to Jt. Dispute Letter, D.E. 46-2, at p. 2.  These conditions included:  (1) "The client is named in the caption of at least one of the complaints filed in *University of Colorado Health* during the specified time period;" (2) "During the specified time period, every person authorized to direct the litigation on behalf of the client was either (a) an officer or employee of the client, (b) a disclosed affiliate of the client, or (c) an officer or employee of a disclosed affiliate of the client;" and (3) "During the specified time period, neither the client nor any of its officers, employees, agents, or affiliates was authorized to direct the litigation on behalf of any other person apart from that client and its disclosed affiliates."  *Id.*

and to decide discovery issues." *Gerald Chamales Corp. v. Oki Data Ams., Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007). This discretion includes the ability to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1); *see also* Fed. R. Civ. P. 33 advisory committee's note to 2015 amendment.

      Defendant, as the party seeking discovery, bears the initial "burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 105 (D.N.J. 1990)); *accord Venner v. Burlington Cnty. Bd. of Social Servs.*, Civ. No. 05-5316, 2006 WL 8457197, at *1 (D.N.J. Aug. 3, 2006). "Discovery of matters not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Caver*, 192 F.R.D. at 154. On the other hand, Plaintiffs, as the parties resisting discovery, have "the burden of clarifying, explaining and supporting [their] objections." *Nestle Foods Corp.*, 135 F.R.D. at 104 (citing *Tele-Radio Sys. Ltd. v. De Forest Elecs.*, 92 F.R.D. 371, 375 (D.N.J. 1981)). Plaintiffs have met this requirement. Plaintiffs explain that they object to Defendant's interrogatories on the basis of relevance. Jt. Dispute Letter, D.E. 46, at p. 8. They also object because Defendant "seeks discovery of information that does not belong to the plaintiffs or, among the plaintiffs' information, is privileged, and also highly confidential and sensitive regarding the interactions between client and counsel." *Id.* at p. 6. The burden therefore remains on Defendant to show that the information requested is within the scope of discovery. *See Nestle Foods Corp.*, 135 F.R.D. at 104.

Defendant contends that Interrogatories 1-3 seek information relevant to the affirmative defense of issue preclusion. Jt. Dispute Letter, D.E. 46, at p. 1. "Collateral estoppel, also known as issue preclusion, prevents relitigation of a particular fact or legal issue that was litigated in an earlier action." *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979)). A party may invoke the doctrine of issue preclusion when

> (1) [an] identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

*Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d. Cir. 1992) (citing *Temple Univ. v. White*, 941 F.2d 201, 212 (3d Cir. 1991)). Privity "applies for issue preclusion purposes only when a non-party controls or directs the previous litigation or when a party is sued in its capacity as a representative of the non-party." *Huber v. Taylor*, 532 F.3d 237, 251 (3d Cir. 2008) (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 410 (3d Cir. 1993)).

Defendant argues the three interrogatories in dispute are appropriate and necessary to obtain "basic information about the control and coordination of the *University of Colorado Health* case and this case – essentially, who has directed [P]laintiffs' counsel and who have been the points of contact for [P]laintiffs' counsel in each case." Jt. Dispute Letter, D.E. 46, at p. 2. The Court disagrees. The Court finds Defendant's interrogatories are vague and confusing. Indeed, Defendant's requests that Plaintiffs "[i]dentify every person or entity that was a client in any attorney-client relationship" and "identify every person or entity that was identified to or recognized by plaintiffs' counsel (in any manner . . .)" could arguably be interpreted as

6

requesting Plaintiff's *counsel* to answer; a clear violation of Rule 33's limitation that interrogatories be addressed only to parties. Exhibit 1 to Jt. Dispute Letter, D.E. 46-1, at pp. 3-5. *See* Fed. R. Civ. P. 33(a)(1). Putting aside this concern, the Court struggles to comprehend how Defendant's interrogatories as currently posed are likely to yield discoverable information on the question of control for purposes of issue preclusion. Inquiring about commonality of representation is simply not probative of whether Plaintiffs are in privity with the named plaintiffs in the D.C. Action. *See Huber*, 532 F.3d at 251.

The Court also finds Defendant's interrogatories implicate the attorney-client privilege and work product doctrine. The attorney-client privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice." *Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 185 (D.N.J. 2012) (citing *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 230-31 (3d Cir. 2007)). The privilege protects not only communications made by the client themselves, but "[c]ommunications between an attorney and third parties, including the client's agents or representatives, . . . if made in confidence for the purpose of obtaining legal advice." *Id.* (citing *La. Mun. Police Emps. Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008)). The work product doctrine is "broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). "'[C]ore work product consisting of 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery'" under the doctrine. *Memory Bowl*, 280 F.R.D. at 186 (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003)). Interrogatory 3 is of particular concern. *See* Exhibit 1 to Jt. Dispute Letter, D.E. 46-1, at p. 5. Interrogatory 3 implicates the attorney-client privilege because it requests that Plaintiffs disclose instructions and identifications made to counsel for

7

purposes of obtaining legal advice. *Memory Bowl*, 280 F.R.D. at 185. It enmeshes the work product doctrine by explicitly asking that Plaintiffs identify "every person or entity" that Plaintiff's counsel recognized "in any manner, including expressly, impliedly, or by operation of law" as having decision-making authority. *See* Exhibit 1 to Jt. Dispute Letter, at p. 5. This is, in the Court's view, akin to asking for counsel's mental impressions, opinions, and thoughts, and will not be permitted.

For these reasons, the Court denies Defendant's informal motion to compel Plaintiffs to provide answers to Interrogatories 1-3. Defendant's motion is denied without prejudice to Defendant serving interrogatories that are more specifically focused on the relationship between Plaintiffs in this matter and the plaintiffs in the D.C. Action.

## IV. CONCLUSION

For the foregoing reasons, Defendant's informal motion to compel [D.E. 46] is **DENIED**. An appropriate Order accompanies this Opinion.

**Dated: August 18, 2022**